UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIE HILL,

                              Plaintiff,

v.                                                              5:23-CV-0396
                                                                (GTS/TWD)
SOAR RESTAURANTS II LLC d/b/a Sonic
Drive In,

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

WILLIE HILL
   Plaintiff, *Pro se*
206 S. Alvord Street, Apartment 2
Syracuse, NY 13203

BOND, SCHOENECK & KING, PLLC            HOWARD M. MILLER, ESQ.
   Counsel for Defendant
1010 Franklin Avenue, Suite 200
Garden City, NY 11530

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

Currently before the Court, in this employment discrimination action filed by Willie Hill

("Plaintiff") against Soar Restaurants II LLC, d/b/a Sonic Drive In ("Defendant"), is Defendant's

motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be

granted pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 8.)  For the reasons set forth below, the

Defendant's motion is denied.

I.      **RELEVANT BACKGROUND**

        A.      **Plaintiff's Complaint**

Generally, in his Complaint, Plaintiff asserts that Defendant discriminated against him on the basis of his gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et sec*., through subjecting him to unequal terms and conditions of employment, demoting him, and terminating his employment. (Dkt. No. 1, at 2-4.) Specifically, Plaintiff alleges that he was hired as a cook at one of Defendant's restaurants around May 9, 2022, and was promoted to associate manager around June 13, 2022. (*Id.* at 7, 10.) He alleges his employment was terminated effective on June 28, 2022, when General Manager Melanie Magaoay eliminated all his scheduled hours. (*Id.* at 17-18.) He further alleges that Ms. Magaoay was biased against male employees and treated them differently than female employees, through conduct such as by talking to male employees like they "were minors," being sarcastic, allowing "the females to stand around drinking shakes and eating ice cream while the guys [were] sweating in the heat of the kitchen," making Plaintiff do all of the cleaning tasks for the kitchen, yelling at Plaintiff on at least one occasion, and firing multiple male employees in a short span of time, including Plaintiff, by reducing their hours and ultimately taking them off the schedule entirely. (*Id.* at 8-20.) He also alleges signs of gender bias through Ms. Magaoay expressing dissatisfaction with her dating life and a statement she made to Plaintiff that she would never date an "Aries male" again. (*Id.* at 7-8, 15-16.)

**B.    Parties' Briefing on Defendant's Motion to Dismiss**

**1.    Defendant's Memorandum of Law**

Generally, in its motion to dismiss, Defendant makes four arguments. (Dkt. No. 8, Attach. 1.) First, Defendant argues that the fact that the Complaint and documents incorporated by reference into it demonstrate that Ms. Magaoay was the individual who hired, promoted, and

2

fired Plaintiff, all within a short period of time, undermines any inference of discrimination. (*Id.* at 9-13.)

Second, Defendant argues that any inference of discrimination is also undermined by the fact that a male employee was hired to replace one of the other male employees who had been fired before Plaintiff, and by the fact that other male employees remained employed despite Ms. Magaoay's alleged gender biases and efforts to get rid of male employees. (*Id.* at 13-14.)

Third, Defendant argues that any inference of discrimination is also undermined by the fact that Plaintiff's own Complaint (and its attached documents) acknowledges that, between May 1, 2022, and July 31, 2022, six female employees had their employment terminated, compared to the five male employees who Plaintiff alleges were fired between June 14, 2022, and June 31, 2022. (*Id.* at 15-16.)

Fourth, Defendant argues that Plaintiff's allegations that Ms. Magaoay's actions towards him were the result of discrimination are conclusory and based essentially on the premise that, because he suffered poor treatment at work, it must be because of his gender, without providing allegations that plausibly suggest such a connection. (*Id.* at 16-18.)

## 2.    Plaintiff's Opposition Memorandum of Law

Generally, in his opposition to Defendant's motion, Plaintiff argues an inference of discrimination exists in the allegations that he and multiple other male employees had their employment terminated by Ms. Magaoay within a two-and-a-half week period, that the reasons Defendant has provided for his own termination and those of the other male employees are inconsistent with other facts, and that Ms. Magaoay would have had no choice but to hire a man to replace one of the fired male employees because "90% of the applicants" for the cook position

3

that needed to be filled were men "so hiring one was going to happen." (Dkt. No. 10, at 1-3.) Plaintiff also argues that, as to the supposed time-and-attendance issues on which Defendant ostensibly based its decision to terminate his employment, there is no record that Plaintiff was ever provided with a written warning or that such issues were documented by Defendant at the time they occurred, an omission that is not consistent with Defendant's own disciplinary policy. (*Id.* at 3.)

### 3. Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendant again makes four arguments. (Dkt. No. 14.) First, Defendant argues that Plaintiff has not responded to its argument that the same-actor inferences undermines his assertion of discrimination and has therefore conceded that point. (*Id.* at 3-4.)

Second, Defendant argues that the fact that most applicants for new jobs at Defendant's restaurant were male does not support Plaintiff's argument that the hiring of a new male employee to replace one of the terminated male employees was unavoidable because, if Ms. Magaoay was as biased as Plaintiff alleges, she could have hired one of the few applicants who were female; yet she hired a new male employee and retained at least one other at the relevant time when Plaintiff's employment was terminated. (*Id.* at 4.)

Third, Defendant argues that Plaintiff has not responded to its argument that female employees were also terminated around the same time as the relevant male employees, including Plaintiff, and has therefore conceded that point. (*Id.* at 5.)

4

Fourth, Defendant argues that Plaintiff's allegations that the time-and-attendance issues Defendant provided to explain Plaintiff's termination are a "cover-up" or "camouflage" are conclusory and do not give rise to a plausible inference of discrimination. (*Id.*)

## II.    GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of

5

what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

6

pleading must contain at least "some factual allegation[s]." *Id*. at 555.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

7

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a]

### III.   ANALYSIS

After careful consideration, the Court finds that Plaintiff has plausibly stated a claim for gender discrimination for the reasons stated below.

"To survive a motion to dismiss, a plaintiff need only establish 'a prima facie case of sex discrimination.'"  *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019).  "'In order for a plaintiff to establish a prima facie case of gender discrimination, the plaintiff must establish that (1) [he] was within a protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'"  *Ouderkirk v. Rescue Mission Alliance of Syracuse*, 21-CV-1048, 2023 WL 8781992, at *11 (N.D.N.Y. Dec. 19, 2023) (Suddaby, J.) (quoting *Fanelli v. New York*, 51 F. Supp. 3d 219, 230 [E.D.N.Y. 2014]); *Amrod v. YouGov*, 23-CV-1104, 2023 WL 8432314, at *3 (N.D.N.Y. Dec. 5, 2023) (D'Agostino, J.) (quoting *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 [2d Cir. 2014]).

"'With regard to the fourth prong of this test, the Second Circuit has held that an inference of discrimination may be drawn either from (1) direct evidence of discriminatory intent, or (2) a showing by the plaintiff that [he] was subject to disparate treatment . . . compared to persons similarly situated . . . to [him]self.'"  *Ouderkirk*, 2023 WL 8781992, at *11 (quoting *Fanelli*, 51 F. Supp. 3d at 230-31) (internal alterations and quotation marks omitted).  Further, for the purposes of a motion to dismiss, "a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation,'" or, in other words, a plaintiff must allege facts

---

defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

in the complaint that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84-85 (2d Cir. 2015). "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in [gender-based] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).

As an initial matter, the Court emphasizes that, on a motion to dismiss, Plaintiff need only allege facts plausibly suggesting a prima facie case of discrimination; the other aspects of the familiar *McDonnell Douglas* burden-shifting standard, including any non-discriminatory reasons Defendant may assert to justify its actions or whether or not such reasons are merely pretextual, are left for further stages of litigation. *See Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 70 (S.D.N.Y. 2015) (noting that whether defendant had a nondiscriminatory reason for firing the plaintiff was immaterial when deciding a motion to dismiss because, at that stage, the plaintiff is required to show only that he is entitled to the initial presumption of a discriminatory motivation) (citing *Littlejohn*, 795 F.3d at 311-12); *Irons v. Bedford-Stuyvesant Cmty. Legal Servs.*, 13-CV-4467, 2015 WL 5692860, at *10 (E.D.N.Y. Sept. 28, 2015) (noting that, at the prima facie stage, "Plaintiffs are not required to show that Defendants lacked a legitimate reason for terminating Plaintiffs in order to raise an inference of discrimination; that inquiry is more appropriate for the pretext stage of the analysis") (internal quotation marks and alterations omitted). Thus, to the extent that the parties' briefing discusses the merit of Defendant's assertion that Plaintiff's

10

employment was terminated for time-and-attendance issues, determining such issues is not required to resolve Defendant's current motion to dismiss.

Turning to the elements of a prima facie case of gender discrimination, there appears to be no dispute by Defendant that Plaintiff has plausibly alleged that he is a member of a protected class and was qualified for the position he was performing.  Nor does Defendant appear to dispute that Plaintiff has plausibly alleged that he suffered an adverse employment action in the form of termination of his employment.   An adverse employment action (for the purposes of a discrimination claims) is one that causes a "materially adverse change in the terms and conditions of employment," which must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega*, 801 F.3d at 85 (citing *Galabya v. New York City Bd. Of Educ.,* 202 F.3d 636, 640 [2d Cir. 2000]; *Terry v. Ashcroft*, 336 F.3d 128, 138 [2d Cir. 2003]). Actions constituting qualifying adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities," or a disproportionately heavy workload.  *Vega*, 801 F.3d at 85 (quoting *Terry*, 336 F.3d at 138; *Feingold v. New York*, 366 F.3d 138, 152-53 [2d Cir. 2004]).  Plaintiff has clearly alleged that his employment was terminated when Ms. Magaoay took him off the work schedule indefinitely.[2]

---

[2]    Plaintiff's other alleged adverse action is that he was assigned all the cleaning tasks for the kitchen both before and after he was promoted to the position of assistant manager, although the treatment escalated after his promotion.  (Dkt. No. 1, at 8-10, 13-14.)  However, as was discussed earlier in this Decision and Order, an alteration of job responsibilities, without a material loss of job title, salary, benefits, or the like is insufficient to constitute an adverse employment action.  *Vega*, 801 F.3d at 85.  Further, although Plaintiff alleges he was the only employee doing the cleaning assignments, he does not allege that he was required to do such

The element that Defendant does challenge is the final one: whether Plaintiff has alleged facts plausibly suggesting that his termination occurred under circumstances giving rise to an inference of discrimination.  Generally, Defendant asserts three arguments as to why Plaintiff has failed to allege facts plausibly suggesting such an inference of discrimination.

First, Defendant argues that no inference of discrimination is warranted because Ms. Magaoay is the same person who both hired and promoted Plaintiff to assistant manager, and who then terminated his employment a short time after his promotion.  As an initial matter, the Second Circuit has not conclusively determined that the same-actor inference applies in cases brought pursuant to Title VII.  *Buon v. Spindler*, 65 F.4th 64, 84 (2d Cir. 2023).  However, even if the inference does apply, the Second Circuit has also cautioned that any such inference, while being relevant at the summary judgment stage when the typical burden-shifting framework is in play, is not "similarly relevant at the motion-to-dismiss stage, when we are primarily concerned with whether there is 'minimal support for the proposition that the employer was motivated by discriminatory intent.'"  *Buon*, 65 F.4th at 85 (quoting *Littlejohn*, 795 F.3d at 311).  "[A]t the motion to dismiss stage, 'the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, i.e., whether plaintiffs allege enough to nudge their claims across the line from

---

cleaning in addition to being expected to complete other prep or cooking responsibilities at the same time such that this alteration of duties would plausibly suggest he was subjected to a disproportionately heavy workload; he merely alleges that it was "wrong" to require him to do all of the cleaning rather than making all managers share in the cleaning tasks.  As a result, even construing Plaintiff's Complaint with special solicitude due to his *pro se* status, he has not alleged facts to plausibly suggest that the assignment of cleaning tasks itself constituted an independent adverse action sufficient to sustain a claim under Title VII.

conceivable to plausible.'" *Buon*, 65 F.4th at 85 (quoting *Vega*, 801 F.3d at 87).  As a result, any potential application of the same-actor inference is not relevant at this stage.

Second, Defendant argues that the fact that Ms. Magaoay not only retained at least one male employee, but also hired a new male employee during the time Plaintiff was still employed undermines any inference of discrimination.  The situation in this case is somewhat distinguishable from that which typically occurs, and which is the basis for the legal authority Defendant cites.  Unlike the cited authority, in which a plaintiff, as the terminated employee, was replaced by an individual also belonging to the protected class, Defendant attempts to point to the fact that multiple other terminated male employees were replaced by a new male employee; it is not clear that such situation is materially similar to one plaintiff himself being replaced by one individual who is also of the protected class.  Further, the fact that "90% of the applicants" for the cook position that needed to be filled were male distinguishes this case from the cases cited by Defendant.[3]  Finally, given the minimal burden on Plaintiff at this stage, it would be inappropriate to place much weight on such facts if Plaintiff can otherwise plausibly suggest a minimal inference of discrimination against him.  *See Pollock v. Shea,* 568 F. Supp. 3d 500, 510 (S.D.N.Y. 2021) (noting that, where the plaintiff had alleged sufficient facts to raise a minimal inference of discrimination, such inference could not be rebutted at the motion-to-dismiss stage by the defendant's treatment of other women in other positions).

---

[3]    *See Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (indicating that courts can read into pro se submissions claims that are "consistent" with the pro se litigant's allegations); *Drake v. Delta Air Lines, Inc*., 147 F.3d 169, 170 n. 1 (2d Cir. 1998) (per curiam) ("Like the district court, we deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss.").

Third, Defendant argues that any inference of discriminatory intent is defeated by the fact that the materials submitted by Plaintiff with the Complaint show that six female employees were also terminated between May 1, 2022, and July 31, 2022, compared to the five male employees that Plaintiff alleges were terminated between May 9, 2022 (when he began his employment) and June 28, 2022 (when his employment was effectively terminated).  Granted, at first glance, Defendant's factual assertion appears to be true, as supported by the evidence appended to Plaintiff's Complaint.  However, setting aside the effect of the termination of female employees on the alleged termination of male employees, the Court has trouble understanding how the termination of female employees undermines the inference of discrimination arising from Ms. Magaoay alleged condescension and sarcasm toward, and criticism of, males.  In any event, all of the authority that Defendant cites for its assertion that such fact entitles it to dismissal of Plaintiff's claim due to an inability to plausibly allege an inference of discrimination notably was decided in the context of motions for summary judgment.  (Dkt. No. 8, Attach. 1, at 15.)  As was discussed above, the burden on Plaintiff regarding an inference of discrimination is not as high at the motion-to-dismiss stage as it is at the summary judgment stage.  *See Vega*, 801 F.3d at 84-85 (indicating that a plaintiff need only allege "plausible support to a minimal inference of discriminatory motivation" to meet his burden as to the fourth prima facie factor); *Pollock*, 568 F. Supp. 3d at 507 ("The Second Circuit has made clear that this standard is more lenient than the traditional requirements for a prima facie case under *McDonnell Douglas*," and that a plaintiff "is not required to plead a prima facie case, at least as the test was originally formulated, to defeat a motion to dismiss") (quoting *Vega*, 801 F.3d 84).  As a result, although

14

the termination of female employees is one fact to consider, the Court finds that it is not inherently dispositive at this stage without a consideration of the rest of Plaintiff's allegations.

Plaintiff, for his part, argues that he has alleged facts plausibly suggesting the requisite discriminatory intent through allegations regarding the termination of multiple other male employees within a short period of time before he himself had his employment terminated. "Generally, a plaintiff's reliance on proof of an alleged pattern of discrimination against other members of a plaintiff's protected class is not alone sufficient to meet a plaintiff's burden of persuasion under the *McDonnell Douglas* framework." *Chalfen v. East Williston Union Free Sch. Dist.*, 19-CV-7170, 2023 WL 2815719, at *14 (E.D.N.Y. Feb. 27, 2023) (citing *Pollock*, 568 F. Supp. 3d at 512; *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 149 [2d Cir. 2012]). As with the termination of female employees near in time to Plaintiff's termination, the termination of other male employees is merely one factor for the Court to consider when assessing whether Plaintiff has plausibly alleged facts regarding an inference of discrimination, and does not alone defeat a motion to dismiss. *See Pollock*, 568 F. Supp. 3d at 511 (noting that, at the motion-to-dismiss stage, the plaintiff could not "use evidence of a pattern or practice of discrimination to shift the burden to the defendants to prove that they did not discriminate against [her]," even if she is entitled to rely on such evidence to support her discrimination claim).

Apart from the fact that multiple other male employees had their employment terminated, Plaintiff's Complaint regarding an inference of discrimination rests on the following allegations: (1) Ms. Magaoay would sometimes be "aggressive" and complain at work because she was having "bad luck on dating sites" and hadn't "been with a guy in months;" (2) she began

15

"showing signs of her dislike for men" around that time, which came in the form of "[t]alking to us like we were minors, being sarcastic, and allowing females to stand around drinking shakes and eating ice cream while the guys [were] sweating in the heat of the kitchen;" (3) she said that she "didn't like" the way one male employee treated a female employee with whom he was in a relationship and stated that she would "take care of that," engaging in verbal abuse and being "mean" to the male employee, and eventually reducing his schedule to 15 hours for the week; (4) she "began yelling and screaming" at Plaintiff after she overheard him complaining to another employee about his having to clean the mess from the previous day's shift; (5) during a discussion after that incident in which Ms. Magaoay apologized to Plaintiff, Plaintiff told her he was "an Aries male with good intuition" to explain why he felt the need to leave work after their argument, to which Ms. Magaoay responded, "Ugh, an Aries male. I dated an Aries male, never again," to which Plaintiff responded that "all men aren't the same;" and (6) Ms. Magaoay responded "with aggression and no concern at all" when Plaintiff had to call off work due to a family emergency, and the following day, she reduced his hours and eventually took him completely off the schedule.   (Dkt. No. 1, at 7-20.)  Evidence attached to the Complaint provides further relevant allegations: a witness from Plaintiff's pre-litigation complaint with the New York State Department of Human Rights, who was Plaintiff's co-worker, stated that "it seemed like Melanie did not like men and men were not treated very well there," he was assigned all the cleaning tasks after Plaintiff's employment was terminated, and that the female employees were not made to do as much work as the male employees, highlighting an example where he "ran 5 stations at once because he is a man while a female employee only did onion rings because that was what she wanted to do."  (Dkt. No. 1, Attach. 3, at 4.)

16

Taken together, these allegations narrowly meet the threshold of providing a minimal support for an inference of discriminatory intent.  Although much of the alleged conduct is facially gender-neutral, there are some allegations that directly implicate gender.  In particular, allegations (which must be taken as true at this stage) that Ms. Magaoay did not seem to like men, that she was "aggressive" towards him and other male employees at work because she was having difficulty with men she was attempting to date outside of work, that she talked to and treated male employees with more aggression, sarcasm, and rudeness than to female employees, and that she let female employees do less work or have their choice of tasks compared to male employees all do broadly and generally suggest that Ms. Magaoay harbored some level of bias against men and treated male employees, including Plaintiff, in a disparate manner than she treated female employees. These gender-specific allegations, when considered in light of Plaintiff's other allegations that multiple male employees had their employment terminated in the same manner Plaintiff did (including one male employee that Plaintiff alleges Ms. Magaoay expressed specific animus towards), at least minimally suggest an inference of discrimination in the termination of Plaintiff's employment.

Defendant, in its memoranda, ignores the gender-specific allegations Plaintiff has included in the Complaint and argues that his claim boils down to nothing more than an assertion that because his employment was terminated, it must have been because he was a man.  (Dkt. No. 8, Attach. 1, at 16-18.  However, Plaintiff's allegations are a far-cry from those in the cases Defendant cites for this argument, cases like *Ochei v. Mary Manning Walsh Nursing Home Co., Inc.*, 10-CV-2548, 2011 WL 744738 (S.D.N.Y. Mar. 1, 2011), in which the claim of discrimination was based on nothing more than the fact the plaintiff was the only Nigerian-born

nurse with employment authorization working for the defendant employer.  *Ochei*, 2011 WL 744738, at *2-3.

The Court also notes that, although allegations regarding a similarly situated comparator are one method by which a plaintiff can show an inference of discrimination, it is not a requirement in all cases.  *See Murillo-Roman v. Pension Bd – United Church of Christ*, 22-CV-8365, 2024 WL 246018, at *11 (S.D.N.Y. Jan. 23, 2024) (recognizing that identification of a similarly situated employee is "but one recognized method of raising an inference of discrimination") (internal quotation marks omitted).  Here, Plaintiff has not provided any allegations regarding a specific female employee who was similarly situated to him in that she also had similar time-and-attendance issues (given that such issues are the reason Defendant has offered for terminating Plaintiff's employment) but whose employment was not terminated.  He has instead generally alleged that female employees were treated more favorably and did not have their hours reduced by Ms. Magaoay.  However, because he is not required to provide allegations of a similarly situated comparator at this stage if his other allegations suffice to raise a minimal inference of discrimination, such omission is not fatal to his claim on this motion to dismiss.

For all of the above reasons, the Court denies Defendant's motion to dismiss.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 8) is **DENIED**.

Dated: March 25, 2024
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

18